PATI–PORT, INC., a corporation,
and

Al B. Wolf, individually and as an officer
of said corporation, Petitioners,

v.

FEDERAL TRADE COMMISSION,
Respondent.

No. 8594.

United States Court of Appeals
Fourth Circuit.

Argued Sept. 26, 1962.

Decided Jan. 17, 1963.

Walter G. Horowitz, Philadelphia, Pa.,
for petitioners.

John W. Carter, Jr., Attorney, Federal Trade Commission (James McI. Henderson, General Counsel, and J. B. Truly, Asst. General Counsel, Federal Trade Commission, on brief), for respondent.

Before SOBELOFF, Chief Judge, BOREMAN, Circuit Judge, and JOHN PAUL, District Judge.

JOHN PAUL, District Judge.

We have here a petition for review of an order issued by the Federal Trade Commission on January 4, 1962, whereby Pati-Port, Inc., a corporation and its representatives, agents and employees and Al B. Wolf, individually and as an officer of said corporation, were ordered to cease and desist from certain practices found by the Commission to be unfair and deceptive, in violation of the Federal Trade Commission Act. 15 U.S.C. §§ 45 (a) (1) and 45(a) (6).

Pati-Port, Inc., was incorporated under the laws of the State of Maryland in March, 1958, with its principal office in the city of Baltimore. Its original officers were Myron C. Gelrod, President; Bernard Weissman, Treasurer; and Al B. Wolf, Secretary; the last named being the individual petitioner before us and who is also known as Abraham Wolf and A. B. Wolf. Weissman appears to have been the most active figure in organizing the corporation and held 75 shares out of the 150 shares of stock which were issued. Gelrod held something like 30 shares and the remaining stock was held by various close relatives of Al B. Wolf.

The business in which Pati-Port engaged was the sale and erection of carports or patios. It is testified that Bernard Weissman managed the business, in that he directed the purchasing, selling and advertising, from the time the corporation was formed (March, 1958) until October, 1958, at which latter time Weissman withdrew from the corporation, resigned as an officer and director

and sold his stock. Following this there was a re-shuffling of the officers and Al B. Wolf, the petitioner here, became President of the corporation, while one Charles Berman was elected Secretary. Gelrod continued as a director until May, 1959, when he resigned and disposed of his stock to Wolf, the petitioner.

On November 24, 1959, the Federal Trade Commission issued a complaint against Pati-Port, Inc., and Wolf as an officer of the corporation who, it was alleged, directed and controlled the acts and practices of the corporation. The complaint, after reciting that the respondents had been engaging in advertising, offering for sale, selling and distributing of carports or patios to the public, alleged that through advertising in newspapers and other media and through oral representations of salesmen respondents, for the purpose of inducing sales of their products, had made representations which were false, misleading and deceptive.

In substance the charges were that respondents were representing (1) that they would sell a carport or patio for the full price of $77.00; (2) that $77.00 was a special low price and that the usual and regular selling price of the carport or patio was $249.00; (3) that persons who allowed the carport or patio installed by respondents to be used for demonstration in selling to others would receive a reduction in price; (4) that the carport or patio was unconditionally guaranteed; (5) that the carports or patios advertised were "all aluminum"; (6) that the carports or patios advertised included a foundation and a completed floor.

The complaint alleged that all of these representations were misleading and deceptive and in some instances completely false. There is no need to review the evidence adduced before the hearing examiner of which there was no serious contradiction and on which he based his finding that the charges were proven to be true and on which he founded his order directing Pati-Port and Wolf, individually and as an officer of the corporation, cease and desist from continuing the condemned practices. Following the initial decision of the hearing examiner Wolf filed with the Commission a petition for review of the examiner's initial decision. This petition for review was denied and a petition for review of such action was then filed in this court.

■ In cases of this sort the findings of the Commission as to facts, if supported by evidence, are conclusive. Federal Trade Commission Act, 15 U.S.C. § 45(c).

Based on the record before us we have no hesitancy in saying that the Commission's findings are clearly supported by the evidence and in agreeing with its action in holding the practices complained of to have been illegal. In fact as the petitioners' case is presented to us it appears that they do not contest this finding. The petition for review which is before this court is filed in the names of both Pati-Port, Inc., and Al B. Wolf, but both by brief and in oral argument the only question presented and argued before us involved the contention that Wolf should not have been included as a subject of the order directing a discontinuance of the illegal practice.

In this respect Wolf contends that the advertising and other practices which the Commission held illegal had been initiated by Weissman when the latter had managed and directed those activities and that he (Wolf) had no part in devising them. Wolf further insists that when he was made President of the corporation it was because he was an accountant by profession and he was chosen to liquidate the business and had nothing to do with its advertising and selling.

The testimony of Wolf before the examiner was contradictory, evasive to the point of being contemptuous, and at times patently contrary to fact. The clear and unquestioned facts strongly deny his protestations of innocence. Throughout his testimony Wolf tried to put the blame for the condemned practices on Weissman and to exonerate himself. It may be that the plan of advertising and selling was formulated by

Weissman, but this does not excuse the fact that it was continued without change during the period while Wolf was head of the business. Weissman severed his connection with Pati-Port about seven months after the corporation was organized. Wolf was President of Pati-Port from early November, 1958, until at least late November, 1959, when the complaint was issued.

The charges made in the complaint issued by the Commission and the evidence by which they were supported dealt with activities occurring while Wolf was head of the corporation. It is no excuse that the same practices had been directed by Weissman at a previous time. Neither does the evidence support Wolf's assertions that he took charge of the business in November, 1958, for the purpose of liquidating it. On the contrary it shows that efforts to sell the company's products through the objectionable advertising and salesmen's representations was pursued without slackening until at least as late as the latter part of July, 1959—by which time the investigation by the Commission had started.

Again Wolf seeks to disassociate himself from the advertising and sales methods used during his regime by saying that they were the responsibility of Berman, the asserted successor to Weissman. But it appears from Wolf's own testimony that whenever Berman desired to run any newspaper advertising he first obtained from Wolf authority to do so, and that Wolf was familiar with the type of advertising used.

To support his contention that he should not have been included in the "cease and desist" order the petitioner appears to rely on the case of Federal Trade Commission v. Standard Education Society, 2 Cir., 86 F.2d 692, and which was reversed by the Supreme Court, 302 U.S. 112, 58 S.Ct. 113, 82 L. Ed. 141. There is no comfort for petitioner to be found in this case unless he

read no further than the opinion of the Circuit Court, and little to be found there. That Court had relieved the President and the Secretary of the company from some of the prohibitions contained in the order issued by the Commission and had relieved entirely one who was asserted to be the comptroller and auditor. However, on certiorari sought by the Commission, the Supreme Court reversed the Circuit Court as to all of the contested holdings. It held all three of the corporate officers to be proper objects of the Commission's order saying (p. 120, 58 S.Ct. p. 117):

> "So far as corporate action was concerned, these three were the actors. Under the circumstances of this proceeding, the Commission was justified in reaching the conclusion that it was necessary to include respondents Stanford, Ward and Greener in each part of its order if it was to be fully effective in preventing the unfair competitive practices which the Commission had found to exist."

To the foregoing we might add the comment that it would seem in cases of this sort to be a futile gesture to issue an order directed to the lifeless entity of a corporation while exempting from its operation the living individuals who were responsible for the illegal practices.

There is no question that the advertising and sales method of Pati-Port, Inc., were properly found by the Commission to be false, deceptive and misleading. It is also clear that the respondent Al B. Wolf was President of the corporation at the time the practices complained of were carried on and that he knew of and approved of them. It follows that the order entered by the Commission on January 4, 1962, should in all respects be affirmed, and it is so ordered.

Affirmed.